1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOEL STEDMAN and KAREN JOYCE,
individually and on behalf of all others
similarly situated,

                Plaintiffs,

      v.

PROGRESSIVE DIRECT INSURANCE
COMPANY,

                Defendant.

Case No.  C18-1254RSL

ORDER CERTIFYING CLASS AND
APPOINTING CLASS COUNSEL

    This matter comes before the Court on "Plaintiffs' Motion for Class Certification and Appointment of Class Counsel." Dkt. # 50.[1] Having reviewed the memoranda, declarations, and exhibits submitted by the parties,[2] the Court finds as follows:

## I. BACKGROUND

    Plaintiffs Joel Stedman and Karen Joyce purchased personal-injury-protection ("PIP") policies from defendant Progressive Direct Insurance Company. The policies provide coverage for "medical and hospital benefits," defined as:

---

[1] A redacted version of the motion is available for public viewing at Dkt. # 42.

[2] This matter can be decided on the papers submitted. Plaintiffs' request for oral argument is therefore DENIED.

ORDER CERTIFYING CLASSES AND
APPOINTING CLASS COUNSEL - 1

> The reasonable and necessary expenses incurred by or on behalf of an insured person within three years of the date of the accident for health care services provided by persons licensed by law to render such services and for pharmaceuticals, prosthetic devices, eyeglasses, and necessary ambulance, hospital, and professional nursing services.

Dkt. # 45-3 at 3. The policy language was approved by the Washington Office of the Insurance Commissioner, and the Washington Supreme Court has determined that the approved language sets forth the only four bases for lawfully denying, limiting, or terminating the medical and hospital benefits afforded by a PIP policy. *Durant v. State Farm*, 191 Wn.2d 1, 9 (2018).

In 2014, Ms. Joyce was injured in an automobile collision. Mr. Stedman was injured in an accident in 2016. They were both covered by a Progressive PIP policy and received some benefits thereunder. A few months after the accidents, Progressive requested that its insureds undergo an independent medical examination ("IME"). Both Ms. Joyce and Mr. Stedman agreed. Prior to the examinations, Progressive sent letters to the examining physicians providing background and materials regarding the insureds and requesting that the physician provide a narrative report addressing a list of specific issues, including whether the insured's condition were fixed and stable, at pre-injury status, had reached maximum therapeutic benefit, or had reached maximum medical improvement ("MMI")). Dkt. # 45-16 at 3; Dkt. # 45-22 at 3. This inquiry is part of Progressive's form template communication with medical examiners.

Ms. Joyce's IME report indicated that she had reached MMI. In notifying the insured of the IME results and its coverage decision, Progressive acknowledged that most of Ms. Joyce's complaints were related to the accident and that the treatment she had received to date (with two exceptions) were reasonable and necessary. "Based on the IME recommendations," Progressive determined that it was "unable to consider for payment, under your client's Personal Injury Protection coverage, treatment after 1/30/15 [the date of the IME] including MD visits, physical therapy, massage therapy, diagnostic testing and medications." Dkt. # 45-25 at 2. No explanation for the termination is provided other than the MMI finding.

ORDER CERTIFYING CLASSES AND
APPOINTING CLASS COUNSEL - 2

1    On February 14, 2017, Mr. Stedman received a copy of an IME report determining that he

2  had reached MMI as of August 31, 2016. Progressive sent him the same type of notification it

3  had sent Ms. Joyce, acknowledging that his injuries were related to the accident and that the

4  treatments received prior to August 31, 2016, were reasonable and necessary. "Based on the IME

5  recommendations," Progressive determined that it was "unable to consider for payment, under

6  Joel Stedman's Personal Injury Protection coverage, physiatric, physical therapy and massage

7  therapy treatment after 2/7/17 [the date of the IME]." Dkt. # 45-21 at 2. Explanations for the

8  termination included both the MMI finding and the examiner's opinion that treatments after

9  August 31, 2016, were not reasonable, necessary, and/or related to the motor vehicle accident.

10  *Id.* The letters Ms. Joyce and Mr. Stedman received follow Progressive's form template

11  communication.

12    In July 2018, plaintiffs filed this lawsuit, asserting that Progressive's reliance on an MMI

13  determination to deny the payment of PIP benefits violates the Washington Insurance Fair

14  Conduct Act ("IFCA") and the Washington Consumer Protection Act ("CPA"), constitutes

15  tortious bad faith handling of insurance claims, and breaches the implied covenant of good faith

16  and fair dealing.[3] Plaintiffs seek to certify a class comprised of:

17      All insureds, as defined within Progressive's Automobile Policy, and all
18      third-party beneficiaries of such coverage, under any Progressive insurance policy
        effective in the state of Washington between July 24, 2012 and the present, for
19      whom Progressive limited benefits, terminated benefits, or denied coverage based,
        even in part, upon its determination that its insured or beneficiary had reached
20      "maximum medical improvement" or a "fixed and stable" condition.

21
22  Dkt. # 50 at 11 (language altered for clarity). Defendant opposes class certification on the

23  grounds that there are no common questions capable of class-wide answers and, even if there

24  were, the individual issues will predominate and representative litigation is not the superior

25  _____

26    [3] The Court has dismissed all of Ms. Joyce's claims other than the CPA claim on limitations
    grounds.

27
28  ORDER CERTIFYING CLASSES AND
    APPOINTING CLASS COUNSEL - 3

method for resolving plaintiffs' claims.

## II. DISCUSSION

Federal Rule of Civil Procedure 23 operates as "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)). To maintain a class action, a plaintiff must "affirmatively demonstrate" compliance with Rule 23. *Comcast Corp.*, 569 U.S. at 33 (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).

### A. Prerequisites of a Class

Pursuant to Fed. R. Civ. P. 23(a), a court may certify a class only if:

(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

A court must conduct a rigorous analysis to determine whether a purported class satisfies the prerequisites of Rule 23. *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012). The Rule "does not set forth a mere pleading standard:" the party seeking class certification must "affirmatively demonstrate his compliance with the Rule -- that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, *etc*." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (emphasis in original).

### (1) Numerosity

Numerosity is satisfied where joinder would be impracticable. *Smith v. Univ. of Wash. Law Sch.*, 2 F. Supp. 2d 1324, 1340 (W.D. Wash. 1998) (citing *Harris v. Palm Spring Alpine Estates, Inc.*, 329 F.2d 909, 913 (9th Cir. 1964)). Progressive does not dispute that the proposed class is of sufficient size to meet the numerosity requirement. *See Ali v. Menzies Aviation, Inc.*, 2016 WL 4611542 (W.D. Wash. Sept. 6, 2016) ("As a general rule a potential class of 40 members is considered impractical to join.") (citing *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d

ORDER CERTIFYING CLASSES AND
APPOINTING CLASS COUNSEL - 4

1546, 1553 (11th Cir. 1986)); *Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988) ("As a general rule, classes of 20 are too small, classes of 20-40 may or may not be big enough depending on the circumstances of each case, and classes of 40 or more are numerous enough.") (citing 3B J. Moore & J. Kennedy, Moore's Federal Practice ¶ 23–05[1] (2d ed. 1987)).

### (2) Commonality

In order to satisfy the commonality criterion, the class members' claims "must depend upon a common contention of such a nature that it is capable of classwide resolution." *Wal-Mart*, 564 U.S. at 338. A class meets the commonality requirement when "the common questions it has raised are 'apt to drive the resolution of the litigation' no matter their number." *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014). This requirement has been "construed permissively," such that not all legal and factual questions must be the same. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998), overruled on other grounds by *Wal-Mart*, 564 U.S. 338. "The existence of shared legal issues with divergent factual predicates is sufficient." *Id.* Rule 23(a)(2) may be satisfied by "a single significant question of law or fact." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012).

Here, common questions are at issue that are apt to drive the resolution of the litigation. Specifically, there are a series of common questions that can be answered on a class-wide basis, such as:

● What is the meaning of "based on" as used by the Washington Supreme Court in *Durant*?

● Did Progressive have a policy or practice of denying, limiting, or terminating PIP benefits "based on" a determination that the insured had reached MMI or a "fixed and stable" condition?

If yes:

    ● Did Progressive's reliance on the MMI determination when denying, limiting, and/or terminating benefits violate WAC 284-30-395?

    ● Did Progressive's reliance on the MMI determination when denying,

ORDER CERTIFYING CLASSES AND
APPOINTING CLASS COUNSEL - 5

1    limiting, and/or terminating benefits violate  IFCA?

2        ● Did Progressive's reliance on the MMI determination when denying,
     limiting, and/or terminating benefits violate the CPA?

3

4        ● Is declaratory relief appropriate where Progressive altered its policies and
     practices after the Durant decision was issued?

5    The answer to the first two questions will "drive the resolution of this litigation." *Parsons v.*

6    *Ryan*, 754 F.3d 657, 684 (9th Cir. 2014). If plaintiffs are unable to prove - through Progressive's

7    manuals and form templates, the testimony of witnesses, the written communications with the

8    insureds, and/or other evidence - the existence of a common policy or practice to curtail PIP

9    benefits "based on" MMI or "fixed and stable" determinations, the class cannot be maintained.[4]

10   If the first question is answered in the affirmative, however, a number of other questions arise

11   that will also be answered on a classwide basis and resolve the claims asserted.

12       Progressive argues that commonality is absent because it does not keep its

13   communications in a format that can be searched for references to MMI or "fixed and stable,"

14   necessitating a review of individual notification letters in order to identify class members.[5] The

15   Court is unaware of any requirement that class members be easily identifiable through a

16   computerized search before a class can be certified, and Progressive has not identified any

17   authority in support of such a requirement. The manner in which Progressive keeps its files or

18   _____

19       [4] Progressive argues that the sample notification letters and form templates are insufficient to

20   prove the existence of such a policy and that, regardless of the language used in the coverage
     determination letters, its "ultimate coverage decision was always based on assessing whether the

21   treatment was 'reasonable, necessary, and related to the accident.'" Dkt. # 57 at 9. These are contested
     issues in this case. A review of the evidence submitted in support of class certification raises at least a

22   colorable argument that a policy violative of WAC 284-30-395 existed.
         The meaning of "based on" and the existence of a common policy or practice are key issues that

23   may warrant early resolution through a bifurcated trial procedure.

24       [5] Plaintiffs propose a single class of persons for whom Progressive limited, terminated, or denied

25   PIP benefits based, even in part, upon an IME determination that the insured had reached "maximum
     medical improvement" or a "fixed and stable" condition. In determining whether a person falls within

26   the class, plaintiffs intend to rely solely on the written notice setting forth Progressive's bases for
     limiting PIP benefits. Dkt. # 50 at 14.

27   ORDER CERTIFYING CLASSES AND

28   APPOINTING CLASS COUNSEL - 6

records its information cannot be the determining factor in the Rule 23(a) analysis. Nor has Progressive argued, much less shown, that it would be impossible to identify class members. To the contrary, the universe of claim files that would need to be reviewed is rather limited and involves only those insureds who were receiving PIP benefits in Washington and were subjected to an IME. Progressive has not shown that difficulties in class member identification prevent a finding of commonality.

### (3) Typicality

The typicality requirement "ensures that the interests of the class representative aligns with the interests of the class." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017) (internal quotation marks omitted). The named plaintiff's claims need not be identical to those of the absent class members, but they must be reasonably similar in light of the injuries suffered and the conduct that allegedly caused the injuries. *Parsons*, 754 F.3d at 685; *Torres v. Mercer Canyons, Inc.*, 835 F.3d 1125, 1141 (9th Cir. 2016). Progressive does not dispute that plaintiffs' claims are typical of the class. The Court finds no reason to suspect that the representative's claims are not "reasonably co-extensive with those of absent class members." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

### (4) Adequacy of Representation

Two questions determine adequacy: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012) (quoting *Hanlon*, 150 F.3d at 1020). Progressive does not dispute that the named plaintiffs and plaintiffs' counsel are committed to vigorously prosecuting this action on behalf of the class and will do so in an adequate manner.

## B.  Maintenance of a Damages Class under Rule 23(b)(3)

Plaintiff argues that the provisions of Rule 23(b)(3) apply, pursuant to which the Court is required to find:

ORDER CERTIFYING CLASSES AND
APPOINTING CLASS COUNSEL - 7

that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the likely difficulties in managing a class action.

**(1) Common Issues Predominate**

The first Rule 23(b)(3) finding requires an evaluation of "the relationship between the common and individual issues." *Hanlon*, 150 F.3d at 1022. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Id.* Viewed through a comparative lens, the common questions identified above are significant. If the second question is decided in plaintiffs' favor - if the fact finder determines that Progressive had a policy or practice of denying, limiting, or terminating PIP benefits based on its determination that the insured had reached (or was about to reach) MMI and/or a fixed and stable condition - the determination will go far in establishing all of their individual claims as well as Progressive's liability to the absent class members. Although each class member will have to prove his or her damages arising from Progressive's curtailment of PIP benefits, "[i]n this circuit, . . . damage calculations alone cannot defeat certification" under Rule 23(b)(3). *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010). As long as the class members are able to show that their damages stemmed from the conduct that created the common legal liability, the common questions predominate over any individualized damage calculation. *See Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (2013).

**(2) Superiority of Class Action**

The second Rule 23(b)(3) finding requires the court to evaluate alternative mechanisms of

ORDER CERTIFYING CLASSES AND
APPOINTING CLASS COUNSEL - 8

dispute resolution based on the factors listed in subsections (A) through (D). *See Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001). Defendant argues that the superior mechanism for resolving this dispute is for each insured whose PIP benefits were denied, limited, or terminated following a medical examiner's determination that he or she had reached MMI or a "fixed and stable" condition to file an individual action. Defendant asserts that class members have substantial incentive to pursue individual claims and that this case is not manageable as a class action.

### (a) Class Members' Interests and Related Litigation

Under Rule 23(b)(3)(A) and (B), the Court considers "the extent of the class members' interests in individually controlling the prosecution or defense of separate actions" and "the extent and nature of any litigation concerning the controversy already begun by or against class members." Defendant hypothesizes that, with PIP benefits of $35,000 plus the possibility of treble damages and an attorney's fee award at stake, individual class members have substantial incentives to pursue and control their own claims. No such claims have been filed in the three years since *Durant* was decided, however. Class members who know about this litigation are apparently willing to cede control to the class representatives, and no class members have so far deemed the potential litigation costs worth the potential benefits of pursuing an individual claim against Progressive.

In addition, $35,000 in compensatory damages would rarely, if ever, be at issue. The current record shows that IME's were conducted after PIP benefits had been paid out for some period of time, and there is no reason to assume that the average insured would continue to incur medical expenses after he or she had been told that no more payments would be made under the policy. In its Notice of Removal, Progressive estimated that it had denied approximately $1.5 million in PIP benefits following an IME. Assuming that all such denials were related to an MMI or "fixed and stable" determination, each class member's claim would be approximately $8,400. While that amount is significant, especially given the treble damages and fee award

ORDER CERTIFYING CLASSES AND
APPOINTING CLASS COUNSEL - 9

possibilities, it has clearly not been enough to trigger individual interest in litigation.

In the circumstances presented here, individual litigation has not been an attractive option and, even if it were, it would unnecessarily burden the judiciary and the parties with repetitious - and expensive - discovery, motions practice, and trial over the same issues. *See Brown v. Consumer Law Associates, LLC*, 283 F.R.D. 602, 615-16 (E.D. Wash. 2012) (holding that class adjudication of class members' claims was superior to separate individual actions when the claims were "relatively small," in the range of $5,000 to $10,000). Because there are no related cases and the putative class members have shown little interest in pursuing individual actions or controlling the prosecution of these claims, the first two factors of the Rule 23(b)(3) analysis weigh in favor of class action treatment.[6]

### (b) Forum Related Considerations

The third factor, Rule 23(b)(3)(C), involves consideration of the desirability or undesirability of concentrating the litigation in a particular forum. The Court finds that this factor weighs in favor of class action treatment because the proposed class is limited to individuals in Washington who are subject to Washington law. The Western District is therefore "an entirely logical place for the case to proceed." *Brown*, 283 F.R.D. at 616.

### (c) Difficulties in Management

The fourth Rule 23(b)(3) factor - the likely difficulties in managing the class action - weighs against class treatment where "each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually" such that "the complexities of class action treatment outweigh the benefits of considering common issues in one trial." *Zinser*, 253 F.3d at 1192. There will undoubtedly be difficulties in managing this class

---

[6] The Court acknowledges that the Honorable Thomas S. Zilly found that insureds raising similar claims against Esurance Insurance Company had the potential for damage awards approximating the policy limits which, along with the availability of treble damages and attorneys' fees, provided substantial incentive for individual lawsuits and weighed against class certification. *Morrison v. Esurance Ins. Co.*, C18-1316TSZ, Dkt. # 84 at 12-13 (W.D. Wash. Feb. 6, 2020).

ORDER CERTIFYING CLASSES AND
APPOINTING CLASS COUNSEL - 10

action. Identification of the absent class members will require a determination of the meaning of "based on" as used in *Durant* and a review of the written notices setting forth Progressive's bases for limiting PIP benefits.[7] The parties have not addressed whether these issues should be resolved before the class is notified of this action or whether broader notice - potentially to all insureds whose PIP benefits were curtailed following an IME - would be appropriate. The individualized nature of the damages associated with the curtailment of PIP benefits will also raise challenges. However, these difficulties are not particularly complex and can be reasonably managed with some forethought and planning. The Court finds that the benefits of a single class action that resolves the common issues identified above outweighs the management challenges that will undoubtedly arise. In addition, there is a "'well-settled presumption that courts should not refuse to certify a class merely on the basis of manageability concerns,' but rather should look to 'manageability as one component of the superiority inquiry.'" *Morrison*, C18-1316TSZ, Dkt. # 84 at 13 n. 8 (quoting *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th Cir. 2017)). Given that the other three four matters pertinent to the Rule 23(b)(3) analysis favor class treatment, concerns regarding manageability will not preclude certification.

### III. CONCLUSION

For all of the foregoing reasons, plaintiffs' motion for class certification is GRANTED. It is hereby ORDERED that the following class is certified pursuant to Fed. R. Civ. P. 23(b)(3):

> All insureds, as defined within Progressive's Automobile Policy, and all third-party beneficiaries of such coverage, under any Progressive insurance policy effective in the state of Washington between July 24, 2012 and the present, for whom Progressive limited benefits, terminated benefits, or denied coverage based, even in part, upon its determination that its insured

---

[7] Unlike the situation in *Morrison*, C18-1316TSZ, Dkt. # 84 at 15, plaintiffs intend to rely solely on the written notices setting forth Progressive's bases for limiting PIP benefits when determining whether a person falls within the class. Dkt. # 50 at 14.

ORDER CERTIFYING CLASSES AND
APPOINTING CLASS COUNSEL - 11

or beneficiary had reached "maximum medical improvement" or a "fixed and stable" condition.

Ms. Joyce and Mr. Stedman are appointed as representatives of the class. Plaintiffs' counsel is designated as counsel for the class. The parties shall meet and confer regarding a case management proposal to quickly and efficiently bring before the Court the issue of the meaning of "based on" as used in *Durant* in light of Progressive's communications with its insured.

Dated this 19th day of July, 2021.

*Robt S Lasnik*
Robert S. Lasnik
United States District Judge

ORDER CERTIFYING CLASSES AND
APPOINTING CLASS COUNSEL - 12