THE HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOEL STEDMAN, on behalf of himself and all others similarly situated; KAREN JOYCE, on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>PROGRESSIVE DIRECT INSURANCE CO., a foreign automobile insurance company,<br><br>Defendant. | CASE NO. 2:18-CV-1254 JNW<br><br>**STIPULATED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Noting Date: August 17, 2023 |

Plaintiffs and Class Representatives Joel Stedman and Karen Joyce, on behalf of themselves and the certified Class they represent, as well as Progressive Direct Insurance Company ("Progressive" or "Defendant"), respectfully submit this Stipulated Motion for Preliminary Approval of Class Action Settlement.

## I. INTRODUCTION.

This is a class action brought by individuals insured under Progressive's Personal-Injury Protection ("PIP") insurance policy. In the lawsuit, the Plaintiff alleges that the Defendant violated Washington Administrative Code §284-30-395 by limiting PIP benefits based on the finding that the insured had reached or would soon reach "Maximum Medical Improvement"

("MMI"). Progressive denies all liability, denies the allegations in the lawsuit, and denies that it limited PIP benefits based on a finding that the insured had reached or would soon reach "Maximum Medical Improvement."

Under WAC §284-30-395(1), insurers are only allowed to deny, limit, or terminate benefits if the insurer determines claimed medical expenses are not reasonable, not necessary, not related to the subject accident, or not incurred within three years of the date of loss. In 2018, the Washington State Supreme Court concluded that MMI was not a lawful basis to limit PIP benefits under WAC §284-30-395(1). *Durant v. State Farm Mut. Auto. Ins. Co*., 191 Wash. 2d 1, 18, 419 P.3d 400, 409 (2018). Plaintiff alleges that Progressive violated this regulation by limiting Class Members' PIP benefits based on a finding of MMI, and that by doing so, Progressive breached its contract with insureds, violated the Insurance Fair Conduct Act, committed bad faith, and violated the Washington Consumer Protection Act.

## II. STATEMENT OF FACTS.

**A. Procedural Posture.**

This action was filed on July 25, 2018, in King County Superior Court. Dkt. #1-2. The action was removed by Progressive on August 24, 2018. Dkt. #1. On October 29, 2018, Progressive filed a Motion for Judgment on the Pleadings. Dkt. #19. On March 4, 2019, the Court granted this motion in part, dismissing Ms. Joyce's claims controlled by three-year statutes of limitations. Dkt. #27. In a contemporaneous order, the Court consolidated this case with *Peoples v. United Services Automobile Association*, another lawsuit alleging bad faith in relation to PIP claims. Dkt. #28. In conjunction with consolidating the cases, the Court also certified two questions to the Washington State Supreme Court pursuant to RCW 2.60.020. *Id*. Both questions focused on the "injury to business or property" element of the Consumer Protection Act (RCW

STIPULATED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION
SETTLEMENT - 2
2:18-cv-01254-JNW

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

1

19.86). *Id*., pg. 8.

2

Between March and August 2019, the Parties prepared and submitted their respective

3

briefs to the Supreme Court. In this effort, Progressive retained Philip Talmadge of

4

Talmage/Fitzpatrick, PLLC to act as appellate counsel. Progressive's position was also supported

5

by an amicus brief filed by the American Property Casualty Insurance Association, which

6

Plaintiffs also responded to.  On November 27, 2019, the Washington Supreme Court issued its

7

opinion in *Peoples v. United Servs. Auto. Ass'n*, which answered both questions in the Plaintiffs'

8

favor. *Peoples*, 194 Wash. 2d 771, 452 P.3d 1218, 1220 (2019). On January 7, 2020, the case

9

was remanded to this Court. Dkt. #33.

10

In October 2020, Plaintiffs filed their Motion for Class Certification. Dkt. #42. In that

11

filing and subsequent briefing, Plaintiffs sought certification of a class of Progressive insureds

12

whose PIP benefits were allegedly limited based on a finding they had achieved "maximum

13

medical improvement" or a "fixed and stable" condition. *Id*. On July 19, 2021, the Court granted

14

Plaintiffs' motion over Progressive's opposition, and certified the *Stedman* Class. Dkt. #74. In

15

that same Order, the Court appointed the named Plaintiffs to serve as Class Representatives and

16

Plaintiffs' Counsel to serve as Class Counsel. *Id*. The *Stedman* Class was defined as:

17

18

> All insureds, as defined within Progressive's Automobile Policy, and all third-party
> beneficiaries of such coverage, under any Progressive insurance policy effective in
> the state of Washington between July 24, 2014 and the present, for whom
> Progressive limited benefits, terminated benefits, or denied coverage based, even
> in part, upon its determination that its insured or beneficiary had reached
> "maximum medical improvement" or a "fixed and stable" condition.

19

20

21

22

23

*See* Dkts. #74 & 97.

24

In certifying the *Stedman* Class, the Court also requested the Parties jointly submit

25

briefing regarding the meaning of the phrase "based on" as used in *Durant*. *Id*. In October 2021,

26

the Court ruled that "where the insurer has incorporated [the terms MMI or "fixed and stable"]

1    into its coverage determination as justification, in whole or in part, for the termination of

2    benefits, a reasonable fact finder could conclude the insurer violated WAC 284-30-395." Dkt.

3    #79, pg 5-6. In that same order, the Court also denied a motion for summary judgment filed by

4    Progressive. *Id*.

5         In March 2022, the Court ordered Progressive to produce select claim file materials for

6    all insureds who underwent an IME during the Class Period. Dkt. #95. In a subsequent order, the

7    Court also amended the Class period to four years prior to filing of Plaintiffs' Complaint. Dkt.

8    #97.

9         After their receipt of the Progressive claim file materials, Class Counsel reviewed and

10   analyzed each of the claim files produced by Progressive to identify any instances where Class

11   Counsel believes Progressive's adjusters identified "MMI" or "fixed and stable" as a basis for

12   limiting PIP benefits. Declaration of Mark Trivett, ¶4.

13        From these materials, Class Counsel prepared a comprehensive Class List of claims

14   facially satisfying the certified-Class definition. *Id*. This Class List showed that the Class was

15   comprised of approximately four-hundred and forty-two (442) individuals. *Id*.

16        After preparing a Class List and conferring with Progressive's counsel, the Parties

17   received Court-approval to distribute certification notice to Class Members. *See* Dkt. #102,

18   Stipulated Motion to Distribute Class Notices. Class Notice was directed to Class Members and

19   the Court-approved notice program was completed by April 24, 2023. Trivett Dec., ¶9. Only one

20   Class Member elected to opt-out. *Id*.

21        On May 11, 2023, the Class filed its Motion for Partial Summary Judgment. Dkt. #105.

22   That motion sought compensation for Class Members in respect to submitted medical expenses

23   allegedly denied as result of Progressive' use of the MMI-standard. *Id*. The value of actual

24

25

26

STIPULATED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION
SETTLEMENT - 4
2:18-cv-01254-JNW

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

damages sought in that motion was $801,786.45. *Id*. On June 2, Progressive filed its response. Dkt. #116.

**B. Settlement Posture.**

In August 2022, Class Counsel made a settlement offer to Progressive on behalf of the Class Members identified during their review. Trivett Dec., ¶6. After receiving this offer, Progressive proposed to participate in mediation, which the Class ultimately accepted. *Id*.; *See* Dkt. #100, Stipulated Motion to Modify Case Schedule, ¶5. To facilitate this, the Parties worked to exchange information, such as the medical expenses denied in association with IMEs, on the claims identified on the Class List. Trivett Dec., ¶5. This data was exchanged, and the Parties agreed to an all-day mediation with mediator Mark Honeywell on January 10, 2023. *Id*., ¶7. At that mediation, the Parties exchanged multiple settlement offers and constructively discussed the strengths/weaknesses of their respective cases. *Id*. Ultimately, the Parties were unable to reach agreement. *Id*.

In March 2023, the Parties exchanged offers once again, but were unable to reach agreement. *Id*., ¶8.

Following the filing of the Class's Motion for Partial Summary Judgment, additional negotiations occurred in the first week of June. *Id*., ¶10. Ultimately, the Parties were able to reach an agreement in principle for gross relief of **$2,150,000** on June 8, 2023. *Id*., ¶11, Ex. One (Conditional Settlement Agreement). On August 3, 2023, the Parties finalized execution of a comprehensive Settlement Agreement setting forth the terms described in this motion. *Id*.

**C. Terms of the Proposed Settlement.**

The terms of the Parties' proposed settlement are contained within the Settlement Agreement. For purposes of preliminary approval, the following summarizes the Settlement Agreement's terms:

**1. The Settlement Class.**

The proposed Settlement Class is identical to that previously certified by the Court. *See* Dkts. #74 & 97; Trivett Dec., Ex. One, ¶1.1. Based on Defendant's records, the Settlement Class is comprised of four hundred and forty-one (441) individual claimants who are Class Members, when accounting for the one Class Member who opted out.

**2. Financial Consideration and Release.**

Under the terms of the Settlement, Progressive will pay a total value of **$2,150,000,** which will constitute the common fund. This represents approximately 268.1% of medical expense damages allegedly incurred in association with an IME on each of the 441 Class Members claims. *Id.*, ¶12. In consideration for Progressive's payment, the Settlement Class Members shall release Progressive, its employees, and affiliated entities from:

> any and all claims that relate to Progressive's adjustment of their PIP claim, including but not limited to claims for declaratory relief, breach of contract, common law bad faith or violation of the implied duty of good faith and fair dealing, and violations of the Washington State Consumer Protection Act (RCW 19.86) or Insurance Fair Conduct Act (RCW 48.30 and WAC §284-30), and any claim to attorneys' fees and costs arising from these claims, which were affirmatively asserted or could have been asserted in the Lawsuit ("Released Claims").

Trivett Dec., Ex. 1, ¶3.4.

Class Counsel proposes that Simpluris shall serve as the Settlement Administrator to prepare and distribute notice of the Settlement, and to receive and report opt-outs and to

distribute settlement funds. *Id*., ¶3.1. Simpluris already has experience on this case and administered the certification notice program. Dkt. #104.

Upon final approval by the Court, the Settlement Administrator will prepare and distribute settlement checks to each Class Member, which will represent their pro rata allocation after deductions for Court-approved attorney's fees and costs, and incentive awards. *Id*., ¶3.5(a). Class Members are expected to receive net allocations equal to **99.29%** of their **denied medical expense damages and prejudgment interest** accrued up to May 2023**.** The checks will be effective for one-year, and Class Members can request that they be re-issued. *Id*., ¶3.10. After one year, any remaining settlement funds will revert to the Washington State Unclaimed Property Fund in Class Members' individual names. *Id*. No funds will revert to Progressive. *Id*.

Under the proposed Settlement, Class Members would be expected to receive a gross median allocation of approximately $2,439, and a net distribution of approximately $1,600.[1] This is significant compensation for Class Members.

**3. The Notice Program.**

The Parties also propose a notice program in which the Settlement Administrator will issue: (1) send individual notice of the settlement by first-class mail and e-mail (where available) to members of the Settlement Class; and (2) process and track opt-opt requests. The proposed Notice of Class Action Settlement is attached as Exhibit Two to the Declaration of Mark Trivett.

**4. Class Representatives' Incentive Awards.**

The Class Representatives will ask the Court to approve a service award of five thousand dollars ($5,000) to be paid out of the common fund. These awards will compensate the Class

---

[1] Because approximately thirty-seven (37) Class Members are expected to receive five-figure gross allocations, this significantly skews the average gross allocation upwards. For this reason, the **median** gross allocation is a more accurate representation of the experience of most Class Members.

STIPULATED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION
SETTLEMENT - 7
2:18-cv-01254-JNW

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

Representatives for their time and effort serving as the named plaintiffs and for the risks they undertook in prosecuting the case. The enforceability of the Settlement is not contingent on the Court's approval of the service award in the amount sought by the Class Representatives.

**5. Attorney's Fees and Costs.**

Class Counsel will ask for an award of attorney's fees amounting to no more than $716,595, representing 33.33% of the gross settlement fund, and reimbursement for out-of-pocket litigation costs, which are estimated to be less than $15,000. Class Counsel will provide an accounting prior to final approval. The enforceability of the Settlement is not contingent on the Court's approval of an award of attorney's fees and costs in the amounts sought by Class Counsel.

**6. Administration Costs.**

Administrative expenses will be paid from the common fund. Subject to the Court's approval, the Class proposes Simpluris as Settlement Administrator. Because certification notice has already been distributed in this matter, much of the work required to identify working addresses for Class Members has been performed. Therefore, administration costs are expected to be modest, not exceeding $10,000.

**D. Considerations in Reaching Agreement.**

The common fund of $2,150,000 represents 268.1% of denied medical expense on Class Members' claims, arguably the most concrete and recoverable category of available damages. This negotiated value considers multiple contingencies and risks: (1) the possibility that Class Members would not be awarded treble damages under the CPA, (2) the possibility that Class Members would only be awarded medical expenses up to their respective policy limits at trial, and (3) the possibility that the Court would conclude that Class Members' injuries were

STIPULATED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION
SETTLEMENT - 8
2:18-cv-01254-JNW

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

uncommon or unmanageable, resulting in potential decertification. Throughout this entire dispute, Progressive has asserted that Class Members are entitled to receive nothing for their claims.

Class Counsel also considered the outcome of similar litigations on this topic, including the settlement approved in the preeminent case, *Durant v. State Farm*. From briefing filed in *Durant*, it appears the gross settlement provided "100% of actual denied claims suffered by the Settlement Class members, and also includes some interest." *See Durant*, Case No. 2:15-cv-01710-RAJ, Dkt. #105, pg. 21 (Oct. 11, 2018). Here, the proposed gross settlement value provides Class Members with recovery equal to **150%** of both actual denied claims and prejudgment interest. Trivett Dec., ¶12.

To ascertain Class Members' membership and damages, Class Counsel analyzed communications between Progressive and approximately six-hundred and fifty (650) insureds, from which the 441 Class Members were identified. *Id*., ¶4. Progressive also produced in discovery data showing the denied medical expenses associated with IMEs on each of the 441 Class Members' claims. *Id*. In each case, it was possible to identify the precise value of medical expenses denied by Progressive based on an IME, and where Progressive cited either achievement of MMI or a fixed-and-stable condition in post-IME communications. *Id*. Thus, it was possible to identify for each Class Member the insurance benefits to which they were allegedly entitled to and deprived of as result of Progressive's practice. *Id*.

As detailed above, after completing this analysis, the Parties exchanged multiple offers and even participated in an unsuccessful mediation before reaching agreement on June 8, 2023. *Id*., ¶9-11. The settlement is the result of five years of contentious litigation, and almost a year of contentious arm's length negotiation. *Id*.

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

### III. AUTHORITY AND ARGUMENT

**A. The Settlement Approval Process.**

As a matter of "express public policy," federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain.  *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"); *see also* William B. Rubenstein, *Newberg on Class Actions* ("Newberg") § 13.1 (5th ed. Updated 2015) (citing cases).  Here, the proposed Settlement is the best vehicle for the Class Members to receive the relief to which they may be entitled in a prompt and efficient manner.

The Manual for Complex Litigation describes a three-step procedure for approval of class action settlements: (1) preliminary approval of the proposed settlement; (2) dissemination of notice of the settlement to all affected settlement class members; and (3) a "fairness hearing" or "final approval hearing," at which settlement class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.  *Manual for Complex Litigation (Fourth)* ("MCL 4th") §§ 21.632 – 21.634, at 432–34 (2014).  This procedure safeguards settlement class members' due process rights and enables the court to fulfill its role as the guardian of class interests.  *See* Newberg § 13.1.

With this motion, the Parties request that the Court take the first step in the settlement approval process by granting preliminary approval of the proposed Settlement Agreement.  The purpose of the preliminary evaluation is to determine whether the settlement "is within the range

STIPULATED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION
SETTLEMENT - 10
2:18-cv-01254-JNW

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

of possible approval" and thus whether notice to the settlement class of the settlement's terms and the scheduling of a formal fairness hearing is worthwhile.  Newberg § 13.13. *See City of Seattle*, 955 F.2d at 1276 (in context of class action settlement, appellate court cannot "substitute [its] notions of fairness for those of the [trial] judge and the parties to the agreement," and will reverse only upon strong showing of abuse of discretion) (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 626 (9th Cir. 1982)). The Court's grant of preliminary approval will allow the Settlement Class to receive direct notice of the Settlement Agreement's terms, and the date and time of the Final Approval Hearing, at which Settlement Class Members may be heard regarding the Settlement Agreement, and at which time further evidence and argument concerning the settlement's fairness, adequacy, and reasonableness may be presented.  *See* MCL 4th § 21.634.

**B. The Criteria for Settlement Approval Are Satisfied.**

The Ninth Circuit puts "a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).  To assess a settlement proposal, courts must balance the strength of the Plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the state of the proceedings; the experience and views of counsel; and the reaction of the class members to the proposed settlement.  *In re Online DVD-Rental Antitrust Litig.* ("*In re Online DVD*"), 779 F.3d 934, 944 (9th Cir. 2015); *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 607 (9th Cir. 2021) (listing factors from the 2018 amendments to FRCP 23 as "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.").

### 1. The Settlement is the Product of Serious, Informed, and Non-Collusive Negotiations.

The Court's role is to ensure that "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (internal quotes and citations omitted); *see also In re Online DVD*, 779 F.3d at 944 (noting settlements in class actions "present unique due process concerns for absent class members," including the risk that class counsel "may collude with the defendants") (quoting *In re Bluetooth Headset Prods. Liab. Litig.* ("*In re Bluetooth*"), 654 F.3d 935, 946 (9th Cir. 2010)).

The Settlement is the result of extensive, arm's-length negotiations between experienced attorneys for both parties who are competent practitioners in class action litigation in general and with the legal and factual issues of this case. *See* Dkts. #46-48 (declarations discussing Class Counsels' experience and qualifications).

### 2. The Settlement is Fair and Reasonable In Light of the Alleged Claims and Potential Defenses.

The Amended Complaint asserts claims for declaratory relief, violation of the Insurance Fair Conduct Act, violation of the Consumer Protection Act, common law bad faith, and breach of the implied covenant of good faith and fair dealing. Dkt. #11. The Amended Complaint also seeks prejudgment interest, exemplary damages, and attorney's fees and costs. *Id.*

STIPULATED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION
SETTLEMENT - 12
2:18-cv-01254-JNW

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

Although this case was conditionally settled before the penultimate issues of liability and damages were resolved, Progressive demonstrated its intent to fiercely contest this litigation. *See e.g.* Dkts. #57, 61, & 103 (Progressive briefs, motions, and objections). Further, it can be argued that potential damages available to Class Members beyond denied medical expenses, such as claims against remaining PIP benefits, are too uncertain for class-wide relief and undermine the Class's commonality and manageability. Further, because Progressive's records only track reason codes showing when expenses were denied based on an IME and does not differentiate between expenses denied based on MMI and those denied based on a lawful basis under WAC §284-30-395. For this reason, Progressive could have argued that damages for denied medical expenses were not liquidated, and that Class Members were not entitled to prejudgment interest. Finally, Progressive has consistently argued that the Washington Supreme Court's *Durant* decision, issued **after** most Class Members' PIP claims were resolved, precluded an award of treble or exemplary damages. All of these arguments, as well as Progressive's litigation posture, posed potential risks.

Under the proposed Settlement, Class Members would receive gross settlement allocations equal to 268.1% of the denied medical expense damages. Trivett Dec., ¶12. The value of a gross median allocation is approximately $2,439. *Id*.

### 3. The Settlement Provides Substantial Relief and Treats All Settlement Class Members Fairly.

As previously described, the Settlement provides that Class Members will receive direct distribution of net settlement proceeds via U.S. Mail and will have up to one-year to claim their check or obtain a replacement check. Trivett Dec., Ex. One, ¶3.9 & 3.10. The proposed allocation plan is based on three variables: (1) the value of medical expenses submitted to Progressive but denied based on an IME, (2) the policy benefits remaining on each Class

STIPULATED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION
SETTLEMENT - 13
2:18-cv-01254-JNW

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

Members' claims, and (3) the date on which denied medical expenses were received. *Id*., ¶3.2. This distribution ensures that each Class Member receives an allocation equitably proportionate to the care which they received, as well as their purchased policy limits. *Id*. For those Class Members with less than $1,500 in denied medical expenses or remaining policy benefits, they will receive gross allocation share equal to $1,500. *Id*. After deductions for attorney's fees and incentive awards, and estimated administrative expenses, the net average recovery is expected to be nearly $1,403,333.33. Over two hundred and eighty-three (283) Class Members will receive the estimated net minimum distribution of $1,592.10, and the highest net recovery is expected to be $66,664.97. Trivett Dec., ¶12.

The Settlement also provides that any undistributed funds will be transferred to the Washington State Unclaimed Property Fund, where they can be claimed for years to come. *Id*., Ex. One, ¶3.10.

Finally, the Settlement provides that Class Counsel and the Representatives will be paid at the same time as Class Members, ensuring an equitable timeline for distribution. *Id*., ¶3.8.

Both the monetary and non-monetary terms of the proposed Settlement are highly favorable to Class Members and ensure that both notice and proceed distribution will be effective.

### 4. Class Counsel's Requested Fees Are Reasonable.

Class Counsel will seek an award of up to $716,595, which is equal to 33.33% of the Conditional Settlement Payment. *Id*., ¶2.1.

The Ninth Circuit has approved two methods for calculating attorneys' fees depending on the circumstances: the lodestar method and the percentage-of-recovery method. Under the lodestar method, the prevailing attorneys are awarded an amount calculated by multiplying the

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

hours they reasonably expended on the litigation by their reasonable hourly rates. *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003). "Under the percentage-of-recovery method, the attorneys' fees equal some percentage of the common settlement fund…" *In re Online DVD*, 779 F.3d at 949. Regardless of the method, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable." *In re Bluetooth*, 654 F.3d at 941.

The benchmark award is 25% of the common fund or gross recovery. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). Here, Class Counsel requests 33.33%. Trivett Dec., Ex. One, ¶2.1. Class Counsel believes this percentage is justified based on their view that the settlement is an excellent outcome and provides substantial benefit to Class Members, as well as the years of labor which culminated in the proposed Settlement. *See* Trivett Dec., ¶2-11.

While Class Counsel were confident in their ability to succeed at summary judgment and at trial, success was by no means guaranteed, especially considering the complexity of the issues involved. Because Plaintiffs' Counsel agreed to prosecute this case on a contingency basis with no guarantee of ever being paid, they have faced a substantial risk over the last five years.

Prior to final approval, Plaintiffs' Counsel will file a separate motion for an award of attorney's fees and costs, addressing in greater detail the facts and law supporting their fee request in light of all of the relevant facts.

### 5. The Requested Service Award Is Reasonable.

 "[I]ncentive awards that are intended to compensate class representatives for work undertaken on behalf of a class 'are fairly typical in class action cases.'" *In re Online DVD*, 779 F.3d at 943 (quoting *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009)). Incentive or service awards are generally approved so long as the awards are reasonable and do not undermine the adequacy of the class representatives. *See Radcliffe v. Experian Info.*

STIPULATED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION
SETTLEMENT - 15
2:18-cv-01254-JNW

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

*Solutions*, 715 F.3d 1157, 1164 (9th Cir. 2013) (finding service award must not "corrupt the settlement by undermining the adequacy of the class representatives and class counsel"). For example, if a settlement explicitly conditions a service award on the class representative's support for the settlement, the service award is improper. *See id.* By contrast, where a settlement "provide[s] no guarantee that the class representatives would receive incentive payments, leaving that decision to later discretion of the district court," a service award may be appropriate." *In re Online DVD*, 779 F.3d at 943.

Here, the Class Representatives individually request service awards of $5,000, or an amount the Court deems appropriate. This value reflects the Class Representatives' participation, and their assistance with discovery, and advocacy on behalf of their fellow Class Members. Trivett Dec., ¶13. Class Representatives' support of the Settlement is independent of any service award and not conditioned on the Court awarding any particular amount or any award at all, in stark contrast to *Radcliffe*. Thus, the named Plaintiffs' adequacy as class representatives is unaffected by an appropriate service award that recognizes their efforts and contributions to the case.

### 6. The Proposed Notice Program Is Constitutionally Sound.

Rule 23(e)(1) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement. Fed. R. Civ. P. 23(e)(1); *see also* MCL 4th § 21.312. The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). According to the Manual for Complex Litigation, a settlement notice should do the following:

STIPULATED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION
SETTLEMENT - 16
2:18-cv-01254-JNW

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

- Define the class;
- Describe clearly the options open to the class members and the deadlines for taking action;
- Describe the essential terms of the proposed settlement;
- Disclose any special benefits provided to the class representative;
- Indicate the time and place of the hearing to consider approval of the settlement, and the method for objecting to or opting out of the settlement;
- Explain the procedures for allocating and distributing settlement funds, and, if the settlement provides different kinds of relief for different categories of class members, clearly set out those variations;
- Provide information that will enable class members to calculate or at least estimate their individual recoveries; and
- Prominently display the address and phone number of class counsel and the procedures for making inquiries.

The proposed form of notice, attached as Exhibit Two to Mr. Trivett's declaration, satisfy all of the above criteria. The proposed Notice is clear, straightforward, and provides persons in the Settlement Class with enough information to evaluate whether to participate in the settlement. Thus, the Notice satisfies the requirements of Rule 23. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 808 (1985) (explaining a settlement notice must provide settlement class members with an opportunity to present their objections to the settlement).

The Administrator will send Notice (Trivett Dec., Ex. Two) by U.S. Mail and by e-mail to all Class Members. Trivett Dec., Ex. One, ¶3.6. This notice provides information to Class Members about relevant deadlines and prospective allocations, as well as instructions for attending the final approval hearing, objecting, or opting out. Trivett Dec., Ex. Two. All in all, the Notice Program constitutes the best notice practicable under the circumstances, provides due and sufficient notice to the Settlement Class, and fully satisfies the requirements of due process and Rule 23.

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

1

**C. Scheduling a Final Approval Hearing Is Appropriate.**

2

The last step in the settlement approval process is a final approval hearing at which the

3

Court may hear all evidence and argument necessary to make its settlement evaluation.

4

Proponents of the settlement may explain the terms and conditions of the Settlement Agreement

5

and offer argument in support of final approval.  The Court will determine after the final

6

approval hearing whether the settlement should be approved, and whether to enter a final order

7

and judgment under Rule 23(e).  Plaintiff requests that the Court set a date for a hearing on final

8

approval at the Court's convenience, approximately 120-150 days after entry of an order

9

preliminarily approving the settlement.  If the Court preliminarily approves the settlement in

10

August 2023, the final approval hearing should be scheduled in December 2023.  The Parties

11

also request that the Court schedule further settlement proceedings pursuant to the schedule set

12

forth below:

13

14

15

16

17

18

19

20

21

22

23

24

25

26

| ACTION | DATE |
|---|---|
| Preliminary Approval Order Entered | At the Court's Discretion |
| Notice Mailing Date | Within 60 days following entry of the Preliminary Approval Order |
| Exclusion/Objection Deadline | 30 days after Notice Mailing Date |
| Claims Administrator's Filing of Exclusion Requests | 15 days after Exclusion/Objection Deadline |
| Plaintiff's Counsel's Fee Motion Submitted | 30 days after Exclusion/Objection Deadline |
| Final Approval Brief and Response to Objections | 30 days after Exclusion/Objection Deadline |
| Final Approval Hearing / Noting Date | Between 120-150 days of entry of the Preliminary Approval Order |
| Final Approval Order Entered | At the Court's Discretion |

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## IV. CONCLUSION

For the foregoing reasons, the Parties respectfully request that the Court: (1) grant preliminary approval of the settlement; (2) approve the proposed notice plan; (3) appoint Simpluris to serve as administrator; and (4) schedule the final fairness hearing and related dates.

*I certify that this memorandum contains <u>5055</u> words, in compliance with the Local Civil Rules.*

DATED this 17th day of August, 2023

**BADGLEY MULLINS TURNER PLLC**

*s/ Mark A. Trivett*_____
Duncan C. Turner, WSBA No. 20597
Mark A. Trivett, WSBA No. 46375
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
Telephone:  (206) 621-6566
Email:  dturner@badgleymullins.com
Email:  mtrivett@badgleymullins.com

**LAW OFFICE OF RANDALL JOHNSON, PLLC**

*s/ Randall C. Johnson Jr.*
Randall C. Johnson Jr., WSBA No. 24556
PO Box 15881
Seattle, WA 98115
Telephone: (206) 890-0616
Email: rcjj.law@gmail.com

**LAW OFFICES OF DANIEL R. WHITMORE, PS**

*s/ Daniel R. Whitmore*_____
Daniel R. Whitmore, WSBA #24012
6840 Fort Dent Way, #210
Tukwila, WA 98188
Telephone: (206) 329-8400
Email: dan@whitmorelawfirm.com

***Attorneys for Plaintiffs and Class***

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**BAKER & HOSTETLER LLP**

*s/ James R. Morrison*_____

James R. Morrison, WSBA No. 43043
Baker & Hostetler LLP
999 Third Avenue, Suite 3900
Seattle, WA  98104
Tel: (206) 332-1380
Fax: (206) 624-7317
E-mail:     jmorrison@bakerlaw.com

Paul G. Karlsgodt, WSBA No. 40311
Sammantha J. Tillotson (Pro Hac Vice)
1801 California Street, Suite 4400
Denver, CO 80202
Tel: (303) 861-0600
Fax: (303) 861-7805
E-mail:     pkarlsgodt@bakerlaw.com
stillotson@bakerlaw.com

*Attorneys for Defendant*

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

1

## **CERTIFICATE OF SERVICE**

2

I hereby certify that on August 17, 2023, I electronically filed the foregoing with the

3

Clerk of the Court using the CM/ECF system which will send notification of such filing to all

4

counsel of record.

5

6

7

*s/ Yonten Dorjee*
Yonten Dorjee, Paralegal

8

**BADGLEY MULLINS TURNER PLLC**
Email:  ydorjee@badgleymullins.com

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

STIPULATED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION
SETTLEMENT - 21
2:18-cv-01254-JNW

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686