UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOEL STEDMAN and KAREN JOYCE,

Plaintiffs,

v.

PROGRESSIVE DIRECT INSURANCE
COMPANY,

Defendant.

CASE NO. 2:18-cv-1254

ORDER GRANTING PRELIMINARY
APPROVAL OF CLASS ACTION
SETTLEMENT

Plaintiffs and Class Representatives, Joel Stedman and Karen Joyce, on behalf of themselves and the Certified Class they represent, as well as Progressive Direct Insurance Company ("Progressive"), have submitted a Stipulated Motion for Preliminary Approval of Class Action Settlement. Dkt. No. 120. This class action was brought by Stedman and Joyce to challenge Defendant's alleged practice of limiting Personal-Injury-Protection ("PIP") insurance benefits based on a finding that the insured had reached or would soon reach "Maximum Medical Improvement" ("MMI") in violation of Washington Administrative Code (WAC) § 284-30-395. WAC 284-30-395(1) dictates that insurers can only deny, limit, or terminate benefits if the insurer determines claimed medical expenses are not reasonable, not necessary, not related to the subject accident, or not incurred within three years of the date of the loss.

The Court GRANTS the motion for preliminary approval of the class action settlement.

**BACKGROUND**

**I. Overview of the case.**

Progressive is an automobile insurance carrier who does business in King County, Washington. Dkt. No. 11 at 2. Stedman is a third-party beneficiary under a contract between Progressive and Maria Eggers. *Id.* Stedman was injured in an automobile accident in March 2016. *Id.* Joyce is insured under a contract with Progressive. *Id.* at 3. Joyce was injured in an automobile accident in August 2014. *Id.*

Both Stedman and Joyce received PIP benefits following their respective car accidents. *Id*. at 6, 8–9. While they were receiving their benefits, Progressive requested that they "undergo a medical examination for determining, among other things, whether [they] had reached, in the eyes of [their] insurer, 'maximum medical improvement] or MMI.'" *Id.* at 8–9. Progressive then terminated their respective PIP benefits contending that they had reached MMI and no "further treatment would be deemed reasonable or necessary or otherwise recoverable from Progressive's PIP coverage." *Id.* at 9.

Stedman and Joyce brought this lawsuit on behalf of all first-party insureds and third-party beneficiaries who made a claim for PIP benefits and who had their benefits subsequently terminated, limited, or denied based on Progressive's claim that the insured had reached MMI. *Id*. at 3. Plaintiffs allege that Progressive violated WAC 284-30-395 by limiting PIP benefits based on the finding that the insured had reached or would soon reach MMI.

**II. Procedural posture.**

Plaintiffs filed this action in the Superior Court of the State of Washington on July 25, 2018. Dkt. No. 1-3 at 5. On August 24, 2018, Defendant removed this case to the United States District Court for the Western District of Washington. Dkt. No. 1 at 1. On October 29, 2018, Progressive filed a motion for judgment on the pleadings. Dkt. No. 19. On March 4, 2019, the

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Court granted this motion in part, dismissing Joyce's claims that were controlled by a three-year statute of limitations. Dkt. No. 27. The Court also consolidated this case with *Peoples v. United Servs. Auto. Ass'n*, which was another case alleging bad faith in relation to PIP claims. Dkt. No. 28. The Court certified two questions to the Washington State Supreme Court pursuant to RCW § 2.60.020. *Id.* On November 27, 2019, the Washington Supreme Court issued its opinion in *Peoples v. United Servs. Auto. Ass'n*, which answered both questions in Plaintiffs' favor. Dkt. No. 33; *Peoples v. United Servs. Auto. Ass'n*, 452 P.3d 1218 (Wash. 2019). The case was remanded to this Court on January 7, 2020. Dkt. No. 33.

Plaintiffs moved for class certification on October 27, 2020. Dkt. No. 42. On July 19, 2021, the Court certified the class of "[a]ll insureds, as defined within Progressive's Automobile Policy, and all third-party beneficiaries of such coverage, under any Progressive insurance policy effective in the state of Washington between July 24, 2012 and the present, for whom Progressive limited benefits, terminated benefits, or denied coverage based, even in part, upon its determination that its insured or beneficiary had reached 'maximum medical improvement' or a 'fixed and stable' condition" ("Class"). Dkt. No. 74 at 11–12. In October 2021, the Court ruled that "where the insurer had incorporated [the terms MMI or "fixed and stable"] into its coverage determination as justification, in whole or in part, for the termination of benefits, a reasonable fact finder could conclude that the insurer violated WAC 284-30-395." Dkt. No. 79 at 6. The Court also denied the motion for summary judgment filed by Progressive. *Id.*

Class Counsel prepared a comprehensive class list of all individuals with claims facially satisfying the certified class definition. Dkt. No. 121 at 1–2. The class list contained 442 individuals. *Id.* at 2. After receiving Court approval, certification notice was distributed to all of the class members. Dkt. Nos. 102, 121 at 3. One class member elected to opt-out. Dkt. No. 121 at 3.

ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - 3

On May 11, 2023, the Class moved for partial summary judgment. Dkt. No. 105. On June 15, 2023, the Parties notified the Court that they had reached a settlement in principle. Dkt. No. 118.

**III. Settlement posture.**

Class counsel made a settlement demand to Progressive in August 2022. Dkt. No. 121. Then the Parties agreed to participate in mediation. *Id*; Dkt. No. 100. On January 10, 2023, the Parties mediated the case, but they did not reach an agreement resolving the case. *Id.* In March 2023, the Parties exchanged offers again but were again unable to reach an agreement. *Id.* After the Class moved for partial summary judgment, the Parties reengaged in settlement negotiations. *Id.* On June 8, 2023, the Parties reached an agreement in principle. *Id*. On August 3, 2023, the Parties finalized execution of a comprehensive settlement agreement ("Settlement"). *Id.*

The Settlement class is identical to the Class that the Court certified. Dkt. Nos. 74, 97. The Settlement class is currently comprised of 441 individual claimants.

Pursuant to the terms of the Settlement, Progressive will pay $2,150,000 to create a common fund. Class members will release Progressive, its employees, and affiliated entities from:

> any and all claims that relate to Progressive's adjustment of their PIP claim, including but not limited to claims for declaratory relief, breach of contract, common law bad faith or violation of the implied duty of good faith and fair dealing, and violations of the Washington State Consumer Protection Act (RCW 19.86) or Insurance Fair Conduct Act (RCW 48.30 and WAC §284-30), and any claim to attorneys' fees and costs arising from these claims, which were affirmatively asserted or could have been asserted in the Lawsuit ("Released Claims").

Dkt. No. 121-1 at 4.

The median net allocation is $1,600. Dkt. No. 120 at 7. Class representatives have asked for a service award of $5,000 each to be paid out of the common fund. Dkt. No. 121-1 at 3. Class counsel has represented that they will ask for no more than 33.33% of the gross settlement fund

and for reimbursement of out-of-pocket litigation costs under $15,000. *Id.*; Dkt. No. 120 at 8. Additionally, administration costs are expected to be under $10,000 and are to be paid out of the fund. Dkt. No. 120 at 8.

**DISCUSSION**

**I. Legal standard.**

"Strong judicial policy. . . favors settlements, particularly where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Fed. R. Civ. P. 23 requires court approval to settle a class action. Fed. R. Civ. P. 23(e).

First, the Court must make a preliminary determination of the merits of the settlement. *See* Manual for Complex Litigation (Fourth) § 21.632 (2004). "The court's focus at the preliminary approval stage is on whether the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Tuttle v. Audiophile Music Direct Inc.*, No. C22-1081JLR, 2023 WL 3318699, at *3 (W.D. Wash. May 9, 2023) (internal citation omitted). Preliminary approval is appropriate when "the court will likely be able to" give final approval. Fed. R. Civ. P. 23(e)(1)(B).

After the Court makes an initial determination that the settlement is fair, reasonable, and adequate, the parties must give the members of the class notice of a formal Rule 23(e) fairness hearing. *Id.* Then, the Court must hold a fairness hearing and make a final determination of whether the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The Court must evaluate the settlement as a "whole, rather than the individual component parts" for "overall fairness." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

**II. 23(e)(2) factors.**

**A. Adequacy of representation.**

Rule 23(e)(2)(A) requires courts to determine whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). When the Court granted class certification, it determined that Stedman, Joyce, and class counsel could adequately represent the class. Dkt. No. 74 at 7. The Court is unaware of any conflicts between the named plaintiffs, class counsel, and the other members of the class. The Court preliminarily finds that the class representatives and class counsel adequately represented the class for purposes of Rule 23(e)(2)(A).

**B. Arm's length negotiations.**

Fed. R. Civ. P. 23(e)(2)(B) requires the Court to evaluate whether "the proposal was negotiated at arm's length." The Court must examine the Settlement for "explicit collusion" and also for "subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d 935, 947 (9th Cir. 2011). Some signs of this are: 1) if a disproportionate distribution of the settlement is to class counsel, 2) if the parties negotiate a clear sailing arrangement providing for the payment of attorneys' fees separate and apart from class funds, and 3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund. *See id.*

The Ninth Circuit has set a "benchmark" fee award at 25% of the recovery obtained for common fund settlements such as this one. *Hanlon*, 150 F.3d at 1029. Class counsel represents that they will ask for an award of attorney's fees amounting to no more than 33.33% of the gross settlement fund. Dkt. No. 120 at 15. The Court cannot make a determination at this time as to whether this is a disproportionate distribution as class counsel has not yet provided facts supporting their fee request. Because the Parties have not made the settlement contingent on

class counsel recovering the full fee, the Court will allow the settlement approval process to proceed. Also, the Settlement does not contain a "clear sailing provision." Additionally, no amount of the Settlement fund will revert to Defendant. Dkt. No. 121-1 at 6.

The Court preliminarily finds that this factor is satisfied.

### C. Adequacy of class relief.

Rule 23(e)(2)(C) requires the Court to evaluate "whether the relief provided for the class is adequate, taking into accounts: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; [and] (iii) the terms of any proposed award of attorney's fees including timing of payment." Fed. R. Civ. P. 23(e)(2)(c). "To evaluate adequacy, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007). "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair." *Officers for Just. v. Civil Serv. Com.*, 688 F.2d 615, 628 (9th Cir. 1982).

*1. Costs, risks, and delays versus settlement amount and scope of released claims and attorney's fees.*

This case was settled before briefing was completed for Plaintiffs' motion for partial summary judgment. Dkt. Nos. 105, 118. Although the Court has not yet made a determination on liability, the Parties were apprised of each other's positions. The Parties recognized that continued litigation presents significant risks as to Plaintiff's ability to prove liability and damages. The common fund amount "considers multiple contingencies and risks: (1) the possibility that Class Members would not be awarded treble damages under the CPA; (2) the possibly that Class Members would only be awarded medical expenses up to their respective

policy limits at trial, and (3) the possibility that the Court would conclude that Class Members' injuries were uncommon or unmanageable, resulting in potential decertification." Dkt. No. 120 at 8–9.

The Settlement provides for a common fund in the amount of $2,150,000. Dkt. No. 121-2 at 2. Class members are expected to receive net allocations equal to 99.29% of their denied medical expense damages and prejudgment interest accrued up to May 2023. Dkt. No. 120 at 7. Class members will receive an estimated gross median allocation of $2,349. Dkt. No. 121 at 4. The gross allocation is approximately 268.1% of the medical expense damages of all 441 class members or 150% of the medical expense damages and prejudgment interest. *Id.* The estimated minimum net distribution is $1,592.10. *Id.* at 4. Class counsel also considered the outcome of similar litigation, including *Durant v. State Farm*, whose gross settlement provided "100% of actual denied claims suffered by the Settlement class members, also includes some interest." *See Durant v. State Farm Mut. Auto. Ins. Co.*, Case No. 2:15-cv-01710-RAJ, Dkt. No. 105, pg. 21 (Oct. 11, 2018).

All attorneys' fees and costs, administration costs, and incentive awards will also be drawn from the settlement fund. *Id.* Although Plaintiffs may have received more money if they proceeded to trial, "inherent in compromise is a yielding of absolutes and an abandoning of highest hopes." *Milstein v. Werner*, 57 F.R.D. 515, 524-25 (S.D.N.Y. 1972).

The Settlement asks for attorneys' fees of no more than 33.33%. *Id.* at 3. The Settlement also requests incentive payments to the two class representatives of $5,000. *Id.* at 3. As discussed above, the Court cannot make a determination as to whether these amounts are reasonable based on the current record. Plaintiffs should include information in their final approval papers through which the Court can perform a lodestar cross-check on the fees counsel seeks under the percentage-of-recovery method of awarding attorneys' fees.

1    The Court does not have any concerns regarding the scope of the released claims.

2         *2. Effectiveness of the proposed method of distributing relief.*

3         Notice of the Settlement will be distributed by mail and e-mail. Under the Settlement,

4    class members will not have to submit claims to receive payment. A third-party administrator

5    will send the checks directly to class members unless they opt-out. The shares will be calculated

6    pro rata based on the medical expenses submitted and denied in Progressive's claims data using

7    specific reason codes up to the maximum remaining policy benefits available. Dkt. No. 121-1 at

8    4. This method of distributing relief is "simple and effective." *Loreto v. Gen. Dynamics Info.*

9    *Tech., Inc.*, No. 319CV01366GPCMSB, 2021 WL 1839989, at *10 (S.D. Cal. May 7, 2021).

10        **D. Whether the settlement treats class members equally.**

11        Rule 23(e)(2)(D) requires the Court to evaluate whether the settlement proposal "treats

12   class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D).

13        The only potential preferential treatment in the Settlement is the incentive awards to the

14   two named class representatives. "[R]easonable incentive awards to class representatives are

15   permitted." *Named Plaintiffs & Settlement Class Members v. Feldman (In re Apple Inc. Device*

16   *Performance Litig.)*, 50 F.4th 769, 785 (9th Cir. 2022) (internal citation omitted). The Court

17   must "evaluate the propriety of requested incentive payments by considering, among other

18   factors, the actions the plaintiff has taken to protect the interests of the class, the degree to which

19   the class has benefitted from those actions, the amount of time and effort the plaintiff expended

20   in pursuing the litigation, and any financial or reputational risks the plaintiff faced." *Id.* at 786

21   (internal citation omitted). The Parties represent that the class representatives have made

22   "material contributions to this litigation, including participating in discovery, assisting in

23   counsel's investigation, and testifying before the Court via declaration." Dkt. No. 121 at 4. Five

24   thousand dollars is also generally regarded as a reasonable amount of money for an incentive

award. *See, e.g.*, *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947-48 (9th Cir. 2015) (district court did not abuse discretion in approving $5,000 incentive awards for each of the nine class representatives where the individual recovery was only $12 per class member); *Gabriel v. Nationwide Life Ins. Co.*, No. C09-0508-JCC, 2010 WL 11684280, at *6 (W.D. Wash. Aug. 9, 2010) (granting $15,000 incentive award per plaintiff based upon representations of counsel and circumstances of the case). Additionally, the $10,000 total for incentive payments make up less than 0.5% of the common fund. *See In re Online DVD-Rental Antitrust Litig.,* 779 F.3d at 948 (comparing incentive awards to total recovery).

Without more information as to the extent of participation of the class representatives in this litigation, the Court is unable to determine at this time whether the requested payment is reasonable.

Besides the incentive award, Stedman and Joyce will receive the same relief as all other class members. There is also no evidence or suggestion that any other class member will receive preferential treatment under the Settlement. This factor weighs in favor of approval.

**E. Notice.**

"Adequate notice is critical to court approval of a class settlement under Fed. R. Civ. P. 23(e)." *Hanlon*, 150 F.3d at 1026. The Court must also separately evaluate the proposed notice procedure. Fed. R. Civ. P. 23(c)(2)(B) requires that the court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The notice must state:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

The Parties have jointly proposed a class notice. Dkt. No. 121-2. The "Notice of Class Action Settlement" ("Notice") adequately informs class members of the nature of the litigation, the essential terms of the settlement agreement, that class members do not have to file a claim for recovery, and information on how to opt-out or object to the settlement. The Notice also identifies class counsel, specifies the amount of the class representatives' incentive payments, and class counsel attorneys' fees payment.

The Parties propose sending the Notice by U.S. Mail and by e-mail to all class members through a third-party administrator. "This notice provides information to Class Members about relevant deadlines and prospective allocations, as well as instructions for attending the final approval hearing, objecting, or opting out." Dkt. No. 120 at 17. The Court approves the notice procedure in the Settlement and directs the Parties to begin the notice process.

## ORDER

For the reasons set for the above, the Court ORDERS as follows:

**A.      Preliminary Approval of Proposed Settlement.** The Parties' Conditional Settlement Agreement ("Agreement") is preliminarily approved as fair, reasonable, and adequate and within the range of reasonableness for preliminary settlement approval. The Court finds that: (a) the Agreement resulted from extensive arm's length negotiations; and (b) the Agreement is sufficient to warrant notice of the Settlement to persons in the Class and a full hearing on the approval of the Settlement.

**B.      Fairness Hearing**. A final approval hearing (the "Fairness Hearing") will be held before the Court on January 17, 2024, as set forth in the Notice to the Class, to determine whether the Agreement is fair, reasonable, and adequate and should be approved. Papers in support of final approval of the Agreement, the incentive award to Plaintiff, and Class Counsel's

application for an award of attorneys' fees, costs, and expenses (the "Fee Application") must be filed with the Court according to the schedule set forth in Paragraph K below. The Final Settlement Approval Hearing, and all dates provided for herein, may, without further notice to the Class, be continued or adjourned by order of this Court. After the Fairness Hearing, the Court may enter a settlement order and final judgment in accordance with the Agreement that will adjudicate the rights of the Class Members with respect to the Released Claims being settled. The scope of the Released Claims will be that set forth in ¶3.4 of the Settlement Agreement.

C.    **Class Notice**. Class Notice must be sent within sixty (60) days following entry of this Order. Simpluris may serve as Administrator. The Administrator will provide mail notice to persons in the Class by mail, and when available, by e-mail as well, according to the program described in the Settlement Agreement. Skip tracing must be performed by the Administrator for all returned mail.

D.    **Findings Concerning Class Notice**. The Court finds that the foregoing program of Class Notice and the manner of its dissemination is the best practicable notice under the circumstances and is reasonably calculated to apprise the Class of the pendency of this action and their right to object to or exclude themselves from the Class. The Court further finds that the Class Notice program is reasonable, that it constitutes due, adequate, and sufficient notice to all persons entitled to receive notice and that it meets the requirements of due process and Civil Rule 23. The Court hereby approves the Notice in substantially the same form as that attached as Exhibit Two to the Declaration of Mark A. Trivett filed in support of the Preliminary Approval Motion.

**E.    Administration**. The Court confirms that it is appropriate for the Defendant to provide the information necessary to provide the notice contemplated herein and to administer the settlement, including names, addresses, and personal identifying information.

**F.    Exclusion from the Class**. Persons in the Class will possess the right to opt out by sending a written request to a designated address within thirty-five (35) days after the Notice Mailing Date. All Class Members who do not opt out in accordance with the terms set forth herein will be bound by all determinations and judgments in this action. Exclusion requests must contain the person's name, address, telephone number, and signature, and must include the following statement: "I request to be excluded from the class settlement in *Stedman v. Progressive*, Case No. #2:18-CV-1254 JNW." The Administrator will retain a copy of all requests for exclusion. Not later than 15 days from the exclusion deadline, the Administrator must file with the Court a declaration that provides copies of all exclusion requests received.

**G.    Objections and Appearances**. Any person in the Class who has not timely submitted a valid request for exclusion from the Class, and thus is a Class Member, may object to the proposed Settlement and appear at the Final Approval Hearing to argue that the proposed Settlement should not be approved and/or to oppose the application of Class Counsel for an award of attorneys' fees and the incentive awards to the Class Representatives.

    1.    In order to object to the Settlement, a Class member must make any objection in writing and file it with the Court and serve on all Parties not later than thirty (30) days after the Notice Mailing Date. The objection must include the person's name, address, telephone number, and signature, and must set forth, in clear and concise terms, the legal and factual arguments supporting the objection. Any objections that are not timely filed and mailed will be forever barred.

ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - 13

2.   In order to speak at the hearing, a Class member also must file with the Court and serve on all Parties a Notice of Intention to Appear at the Fairness Hearing with the Court no later than thirty (30) days before the Fairness Hearing. The Notice must include the person's name, address, telephone number, and signature.

**H.    Further Papers In Support Of Settlement And Fee Application**. Class Counsel's Motion for Attorneys' Fees and the Motion for Final Approval must be filed within thirty (30) days of the Exclusion/Objection Deadline as provided in Paragraph K. Class Counsel should include information in their final approval papers through which the Court can perform a lodestar cross-check on the fee award counsel seeks under the percentage-of-recovery method of awarding attorneys' fees.

**I.    Effect of Failure to Approve the Agreement**. In the event the Agreement is not approved by the Court, or for any reason the Parties fail to obtain a Final Judgment as contemplated in the Agreement, or the Agreement is terminated pursuant to its terms for any reason, then the following will apply:

1.   All orders and findings entered in connection with the Agreement will become null and void and have no further force and effect, may not be used or referred to for any purposes whatsoever, and will not be admissible or discoverable in any other proceeding;

2.   The Agreement and its existence will be inadmissible to establish any fact or any alleged liability of the Defendant for the matters alleged in this action or for any other purpose; and

3.   Nothing contained in this Order is, or may be construed as, any admission or concession by or against the Defendant or Plaintiffs on any point of fact or law.

**J.     Stay/Bar Of Other Proceedings.** All proceedings in this action are stayed until further order of the Court, except as may be necessary to implement the terms of the Settlement. Pending final determination of whether the Settlement should be approved, Plaintiffs, all persons in the Class and persons purporting to act on their behalf are enjoined from commencing or prosecuting (either directly, representatively, or in any other capacity) against any of the Released Parties any action, arbitration, or proceeding in any court, arbitration forum, or tribunal asserting any of the Released Claims as defined in the Agreement.

**K. Timeline**.

| ACTION | DATE |
|---|---|
| Preliminary Approval Order Entered | At the Court's Discretion |
| Notice Mailing Date | Within 60 days following entry of the Preliminary Approval Order |
| Exclusion/Objection Deadline | 30 days after Notice Mailing Date |
| Claims Administrator's Filing of Exclusion Requests | 15 days after Exclusion/Objection Deadline |
| Plaintiff's Counsel's Fee Motion Submitted | 30 days after Exclusion/Objection Deadline |
| Final Approval Brief and Response to Objections | 30 days after Exclusion/Objection Deadline |
| Final Approval Hearing / Noting Date | Between 120-150 days of entry of the Preliminary Approval Order |
| Final Approval Order Entered | At the Court's Discretion |

The Fairness Hearing is scheduled on January 17, 2024, at 9:00 AM in Courtroom 16106 at the Seattle Courthouse.

**IT IS SO ORDERED**

Dated this 14th day of September, 2023.

Jamal N. Whitehead
United States District Judge